657 P.2d 14

Johnny M. YBARRA,
Petitioner-Appellant,

v.

Ed DERMITT, Warden, Idaho State
Penitentiary, Respondent.

No. 13981.

Supreme Court of Idaho.

Jan. 7, 1983.

Klaus Wiebe, Ada County Public Defender, Laird B. Stone, Boise, for petitioner-appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Sol. Gen., Boise, for respondent.

DONALDSON, Chief Justice.

Two letters, attached to the presentence report were included in Ybarra's institutional file and were examined by the Parole Commission before denying him parole in March 1978, and again in March 1979. After the second denial Ybarra filed a petition for a writ of habeas corpus and requested that the letters be removed from his file. The magistrate judge denied the petition and Ybarra appealed to the district court. The district court also denied the request and from this denial Ybarra appealed to this Court.

The issue raised on this appeal is whether there is a rational basis in the record for the Parole Board's denial of the petitioner's request for parole in light of the fact the Board considered two letters that the appellant argues should not be in his prison file.

Several federal courts have held and we follow that the Parole Board has broad discretion and in reviewing a Parole Board's decision a court may not substitute its judgment for that of the Board. *Zannino v. Arnold,* 531 F.2d 687 (3d Cir.1976). *See* I.C. § 20–223. Therefore, the scope of review is limited to determining whether the information relied on by the Parole Board was sufficient to provide a factual basis for the reasons given. "The inquiry is not whether the Board is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Board's conclusions embodied in its statement of reasons." *Zannino* at 691.

The appellant argues that there is not a rational basis to support the Board's decision because in denying parole the Board considered two letters that contained hearsay and unsubstantiated allegations. The appellant requests that either the letters be removed from his file or he be given a full evidentiary hearing to challenge the credibility of the letters.

John P. Harwell, the Executive Secretary of the Commission for Pardons and Parole stated in an affidavit before the district court that the letters were "only one factor in the decision" and that "[t]he Parole Commission also relied upon the pre-sentence investigation report in this matter which stated that the Petitioner had been selling drugs to juveniles."

We hold that the Parole Board's reliance on the pre-sentence report, including the two letters received from the police officers, is sufficient to establish a rational basis for the decision. Even though the letters contained hearsay they could be taken into account by the Parole Board because I.C. § 20–225 allows the Parole Board to consider information used by the sentencing court and Rule 37(d) of the Idaho Rules of Criminal Practice and Procedure[1] states that a sentencing judge may consider information of a hearsay nature if the pre-sentence investigator believes the information is reliable. Therefore, since the letters were available to the sentencing judge they can also be considered by the Parole Board.

We hold there was a rational basis for the Board's conclusions and affirm the denial of the petition for a writ of habeas corpus.

SHEPARD, BAKES and HUNTLEY, JJ., concur.

BISTLINE, Justice, dissenting.

That I have not joined the Court's opinion may be taken as evidencing a modicum of

---

1. The Idaho Rules of Criminal Practice and Procedure were in effect at the time this petition was filed. Rule 37(d) is almost identical to the current I.C.R. 32(e). I.C.R. 32(e) went into effect on July 1, 1980.

dissatisfaction with the procedure by which the Court examines and the rationale by which it upholds the use of such damaging letters.[1] The rationale seems to be that once an accused citizen is convicted, the use of hearsay to enhance his sentence or extend his stay in confinement becomes permissible, *if the Supreme Court so edicts.* The procedure is even more suspect than the rationale.

I do not see that the legislature has ever provided for the use of hearsay contained in a presentence report. *See* I.C. §§ 20–220 and 19–2601. It is the Court that has done so. *See State v. Moore,* 93 Idaho 14, 18, 454 P.2d 51, 55 (1969) (citing Annot. 96 A.L.R.2d 768, 779–808 (1964) for the proposition that "in the absence of a statute limiting what may be considered or of a showing that the court actually relied upon erroneous information, information may be received from almost any source for what it is worth."). My understanding is that the practice of utilizing presentence reports arose in the judicial system, not as a means for prejudicing a convicted defendant in the eyes of a sentencing judge, but as a means whereby a defendant seeking probation could request an investigation into his past which might show that he merited such favorable treatment.[2] With extremely good cause I question the applicability of I.C. § 20–225. Once again I doubt the authority of the Court to promulgate "a rule of procedure" which is not such at all, but on the contrary is entirely substantive in nature and in derogation of the fundamental right of confrontation.[3]

My dissent is not to be taken as any indication that Ybarra is entitled to a release on parole—such is a matter for the Parole Board. Ybarra may not be entitled to parole, but at stake here is the propriety of a procedure which denies him, and others likewise confined, the right to a fundamentally fair determination.

## APPENDIX

## Chief of Police    [SEAL]    City of Burley

RICHARD J. MAY

P O BOX 1090 BURLEY, IDAHO 83318
PHONE 678–1106

To whom it may concern:    February 28th, 1977

This letter is in regards to Johnny Martinez Ybarra. Johnny Ybarra has been the subject of several investigations involving the sale of Narcotics and dangerous drugs by the Burley Police Dept. Johnny Ybarra has been involved in narcotics dealings and other crimes. The Burley Police Dept. has tried unsuccessfully several times to make felony cases to bring charges against Johnny Ybarra.

Johnny Ybarra had up until the time of his arrest been selling narcotics at the Burley High School. He not only sold Marihuana but went into hard core drugs like Heroin and Cocaine. And his associations were with people that are serving long prisoner

1. Copies of the letters are set forth in the Appendix.

2. See the remarks of Bistline, J., as to the improper use of letters set out in *State v. Griffiths,* 101 Idaho 163, 182, 610 P.2d 522, 541 (1980), and note also that the district court, the Honorable Arnold T. Beebe, struck the letters.

3. I am especially skeptical of the Court's authority and wisdom in granting pretrial investigators the unbridled right to include hearsay in a report if the said investigator "believes that the information is reliable." If he or she so believes, then sayeth the Court, "the court may consider such information." I.C.R. 32(e).

terms for the same type of crimes that Ybarra has been involved in.

Johnny Ybarra is admired and looked up to by a lot of young Mexican-Americans in the North side of the City of Burley. They would do anything to gain his attention and gratification. I don't feel that he can do them any good. I feel that he is responsible for a good many young people that are now addicted to Heroin and other dangerous drugs. I have spoken to some of the young people that were once associated with Johnny Ybarra, and wish to remain anonymous. They say that because of people like Johnny Ybarra the lives and futures of many kids are marred for life. Johnny Ybarra introduced them to the fantasies of the likes of LSD—Heroin—Cocaine—Marihuana.

I feel that Johnny Ybarra is a bad influence on the young people that look up to the likes of him for leadership. And why, because they are too young to know any better. I feel that Ybarra is a candidate for the Idaho State Penitentiary. If others see what the consequences are for getting involved in the Narcotics world, they might think twice and not become another Johnny Ybarra.

/s/ Det. Cpl. Francisco C. Segovia
Det. Cpl. Francisco C. Segovia
Burley Police Dept.
Detective Division

LAW ENFORCEMENT CENTER                129 EAST 14TH STREET

## Chief of Police – City of Burley

RICHARD J. MAY – TELEPHONE 208/678–1106
P. O. BOX 1090, BURLEY, IDAHO 83318

February 22, 1977

TO WHOM IT MAY CONCERN:

I have known Johnny Ybarra since I was in the seventh grade and have known about his activities pushing narcotics on my fellow classmates. Through my high school days, he was very active in pushing drugs on my fellow classmates and friends.

In December, 1976, he and two 14 year old females were at North Park in Burley sniffing paint fumes. The juveniles were runaways from Pocatello and he was harbouring them from the officials.

/s/ Ruben Saldana
Ruben Saldana
Patrolman